HARRIS V. PEOPLE.

*Statutory construction — Laws of 1868, chapter 563, not repealed. Criminal plead-*
*ing — perjury — duplicity. Criminal evidence — variance — motive.*

Chapter 563 of Laws of 1868, creating the office of Metropolitan Fire Marshal,
has not been repealed, and an indictment for perjury will lie for false swear-
ing in any matter legitimately before such marshal.

An indictment for perjury charged the defendant in one count of having sworn
to certain false allegations in his oral testimony on the investigation of the
origin of a fire in New York city, by the fire marshal, and in another count
of having sworn to in substance the same allegations in an affidavit in the
same proceeding sworn to before the fire marshal. *Held*, an authorized
mode of pleading. Though a defendant may not be charged with different
felonies in different counts he may be charged with the same offense in dif-
ferent ways.

The indictment charged that defendant had sworn falsely in his affidavit
as to several necessary and material matters contained therein "in sub-
stance and effect following, that is to say," etc., and set forth that he stated
that there was on the premises destroyed by fire "60,000" cigars. The affi-
davit produced stated that there were "65,000" cigars. *Held*, not a material
variance. When the oath is set out "in substance and to the effect follow-
ing" a literal copy is not required.

Evidence on the part of the people, that the defendant, whose property was
destroyed by the fire, it being insured, in his testimony before the fire mar-
shal, stated the value of the property to be much greater than it was; *held*,
to be admissible upon the question of motive.

ERROR to the New York General Sessions to review the con-
viction of Aaron Harris for perjury. The facts sufficiently
appear in the opinion.

*Ira Shafer*, for plaintiff in error.

*Benjamin K. Phelps*, for the people.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

BRADY, J. The plaintiff in error was convicted of perjury at
the December, 1873, Term of the General Sessions, and sentenced
to ten years imprisonment in the State prison. The perjury alleged
in the indictment was committed on the 13th day of September,

1873, before George H. Sheldon, fire marshal of the city of New York, who was investigating the cause, origin and circumstances of a fire which occurred on the 5th of September, 1873, at No. 10 Hester street, in a building occupied by the plaintiff in error and his copartner as a tobacco manufactory. This investigation was entered upon by the fire marshal in pursuance of the duty and authority imposed upon him by chapter 563 of the Laws of 1868, and the several acts supplementary thereto. The plaintiff in error swore on his examination that at the time of the fire he was not in the city of New York but was in the city of Troy. He also swore that at the time of the fire there was in the building in which the fire occurred a stock belonging to him and his copartner, consisting of sixty-five thousand cigars, one hundred and eighty-five thousand cigarettes, four hundred pounds of Havanna tobacco of the value of one dollar and fifty cents per pound, six hundred and forty-five pounds of Virginia tobacco of the value of sixty-five cents per pound, and that he and his partner sustained a loss by the fire of between five and six thousand dollars.

The indictment contains two counts, one alleging perjury in the oral testimony given before the fire marshal, and the other alleging perjury in swearing to an affidavit before the same officer containing in substance the same allegations. The plaintiff in error was convicted upon the second count of the indictment.

On the trial evidence was given in relation to the value of merchandise upon the premises in behalf of the people. It is claimed by the people that the evidence shows that the fire was designed and for the purpose of making a false claim against the insurance company, although that is not important in regard to the accusation of which the plaintiff in error was convicted.

The first objection taken on the trial was to any testimony being given in support of the indictment, on the ground that the act of May 4th, 1868 (Laws of 1868, chap. 563), creating the office of metropolitan fire marshal, giving him power to administer oaths and condemning false swearing in any proceeding before him, had been repealed. This objection is not tenable. The act of May 4th, 1868, *supra*, has not been repealed. The Laws of 1857, chap. 504, gave to the chief of police the authority to investigate the origin of fires. The act of May 4th, 1868, created the office of the metropolitan fire marshal and made it his duty (§ 2) to " examine into the cause, circumstances and origin of fires (occurring in the por-

tions of the metropolitan police district in which regular patrolmen of metropolitan police are authorized and appointed) by which any building, vessel, vehicle or valuable personal property shall be accidentally or purposely destroyed, lost or damaged, wholly or partially, and to especially inquire whether the fire was the result of carelessness or the act of an incendiary; to take the testimony, on oath, of all persons supposed to be cognizant of any facts, and to have means of knowledge in relation to the matters therein required to be examined and inquired into, and cause the same to be reduced to writing," etc. The third section of the act gives him power to issue a notice in the nature of a subpœna, to compel the attendance of any person as a witness before him to testify in relation to any matter which, by the provisions of the act, was the subject of inquiry and investigation by him; to administer and verify oaths and affirmations of persons appearing as witnesses before him, and declares that false swearing "in any matter or proceedings aforesaid shall be deemed perjury, and shall be punishable as such."

This act was followed by the act of April 26, 1870 (chap. 383), which was amendatory of an act passed in the same year (chap. 137, § 44), and is as follows :

"§ 44. The board of police shall have power to appoint a fire marshal, chief clerk and assistant clerk, who shall hold office during the pleasure of the board ; and such board, marshal and clerks shall have the like powers and perform the like duties as those provided by chapter 563 of the Laws of 1868, so far as they are applicable to the city of New York ; and the compensation of said marshal and clerks shall be the same as now fixed in and by said act" (§ 21).

The charter of 1873 (Laws of 1873, chap. 335) gave the appointment of the fire marshal to the fire commissioners, but conferred upon the marshal (§ 76) all the powers and imposed upon him all the duties given and imposed by the previous statutes relating to that office.

The act of 1871 (chap. 584) did not in any way limit the powers and duties of the marshal. By section 4, it invested him with the same powers conferred by the act of 1868, *supra*, and also the same powers conferred upon the superintendent of police of the city of New York by the act of 1857 (chap. 504). The marshal, by these acts, was authorized to examine into the cause, circumstances and

origin of fires, by which any building, vessels, vehicles or valuable personal property should be accidentally or purposely destroyed, lost or damaged, wholly or partially, and especially to take the testimony, on oath, of all persons supposed to be cognizant of any facts or to have means of knowledge in relation to the matters therein required to be examined and inquired into ; also to compel the attendance of witnesses, and to administer oaths and affirmations to persons appearing as witnesses before him. It is very clear, therefore, that for any false swearing as to any matter legitimately within the sphere of the marshal's powers, an indictment may be had and a conviction secured on competent evidence.

The further objection that there was no legal proof, that the witness, Mr. Sheldon, the fire marshal, was the officer referred to in the indictment is equally unavailable. He testified without objection, that he was then, and had been, fire marshal from the 21st of May preceding his examination, and on cross-examination stated by whom appointed and the manner of his appointment.

The indictment, as already suggested, was predicated of the oral testimony of the plaintiff in error, and his affidavit signed by him and sworn to before the fire marshal. Two counts were employed to develop both phases of the offense. It is perhaps unnecessary to cite authorities to show this to be an authorized mode of pleading. It may be said, however, that though a defendant cannot be charged with different felonies in different counts, yet he may be charged with the *same felony* in different ways in several counts to meet the facts of the case. Barb. Crim. Prac. 340, and cases cited. The offense herein was precisely the same, but charged in different ways.

The plaintiff in error was charged with having sworn falsely in his affidavit, of and concerning several necessary and material matters contained therein, " in substance and effect following, that is to say," etc. One of the matters stated as alleged, was that there were on the premises " 60,000 " cigars, whereas, by the affidavit, when it was produced, the statement made was that there were " 65,000 " cigars, and in this respect there was a variance between the proof and the charge. The plaintiff in error urges this as a fatal error, but he is mistaken. When the oath is set out " in substance and to the effect following," a literal copy is not required. It is not necessary to set forth the affidavit, etc., on which perjury is assigned, *verbatim*. *People* v. *Warner* 5 Wend. 271. " To my apprehen-

sion," said MARCY, J., "the substance and effect of an instrument in writing cannot, either in common parlance or legal import, be understood to mean an exact copy of it." No apprehension could be reasonably entertained that the plaintiff in error, being convicted of the offense charged upon that paper, could be convicted a second time for the same offense. The variance is clearly a clerical error.

These views dispose of the objections to the authority of the fire marshal, to the admissibility of the affidavit on account of the alleged variance, and to the legality of the conviction under one of the counts. There remains to be considered, however, the propriety of investigating the question as to the value of the property as stated in the affidavit to which objection was made, and of which it seems to have been claimed perjury could not be assigned. It is true that the value of the property in the abstract is not at all material to the question of how the fire originated; but when the inquiry is extended and the examination made to embrace not only that subject but another, namely, whether it was the result of carelessness, or the act of an incendiary; it may become material to know whether any misrepresentation has been made in reference to the property assumed or said to be destroyed, and if yea, whether it furnished a motive which might influence one to become an incendiary whoever he might be. The complaint against the plaintiff in error was two-fold, that he had sworn he was absent from the city when the fire took place, when he was not, in fact, absent; and secondly, that he had falsely augmented the value of the property on his premises at the time of the fire. In seeking the origin and circumstances of the fire, and with a suspicion against the plaintiff in error, his asserted value of the property, if enhanced beyond its true value, was an important and material element, and one necessarily embraced legitimately within the inquiry established. It was not erroneous, therefore, either to admit the evidence on the question of value, or submit the issue created by it to the jury.

The testimony in reference to the absence of the plaintiff in error from the city was strong on his behalf, it would seem, from the appeal book, but we cannot say that it was sufficient to overcome the testimony given on behalf of the people. The design of the statute in creating a fire marshal, and investing him with broad and, therefore, ample powers, was to detect and punish the crime

of arson, which, without that officer, might not be discovered; and, therefore, the legislature made false swearing before him perjury if it related to any subject legally within his authority. The facts and circumstances which would tend to show the act of firing might, in many instances, become valuable in demonstrating the perjury committed, particularly those bearing on the existence of motive which is always coupled with design.

The judgment must be affirmed.

*Judgment affirmed.*